# THE COUNTY COMMISSIONERS OF FREDERICK COUNTY *vs.* OTHO T. FOUT ET AL.

*Mandamus—Defenses Available on Second Application—Highways and Streets—Road Improvement on Petition of Abutting Owners Under Code, Art. 91—Estimate of Cost by Economic Commissions Exceeding Twenty-five Per Cent. of Road Levy.*

A petition for a mandamus to require the commissioners of a county to request the Economic Survey to make plans and estimates for the repair of a certain road, was resisted by the defendants on the grounds of the unconstitutionality of the law under which the petition was filed, and of a repugnancy between certain sections of it. It was held that these objections were untenable. A mandamus was issued and complied with, and an estimate of cost received by the County Commissioners. The petitioners then applied in this case for a mandamus directing the County Commissioners to advertise for bids for the construction of the road. Their answer alleged that the estimate made for the proposed work is greater than twenty-five per cent. of the road levy of the county, and that consequently it was discretionary with them to advertise for bids or not. *Held*, that since the petition for the first mandamus was an application for a different purpose from that contemplated by this petition, the defendants are not precluded from relying upon the said defense by reason of Code, Art. 60, sec. 4, which provides that no defendant shall be allowed on a second application for a mandamus to rely upon any matter by way of defense which he might have relied on in his answer to the previous application.

Under the provisions of Code, Art. 91, secs. 34, 38, etc. (Act of 1904, Chap. 225), the owners of two-thirds of the land lying on a public road are authorized to require the County Commissioners to call upon the Chief Engineer of the Economic Survey to make plans and specifications and an estimate of

the cost of improving the road. The cost of the construction is to be paid in different designated proportions by the petitioners, the County and the State, the share of the petitioners to be ten per cent. Sec. 38 then provides that after receipt of the plans, specifications and estimate, the County Commissioners, if the ten per cent. of the estimated cost be paid or secured by the petitioners, shall advertise for bids for such road building or improvement, "provided that nothing in this section shall require the County Commissioners, upon the petition of such persons agreeing to pay ten per cent., to advertise for work to be done to an amount greater than twenty-five per cent. of the road levy of said county." *Held,* that this proviso refers to the whole estimated cost of the road, and not merely to such part of the cost as the county has ultimately to pay, the whole cost being paid in the first instance by the county; that in determining whether the amount to be paid will be greater than twenty-five per cent. of the road levy, the commissioners are to be guided by the estimate made by the Economic Commission; that if that estimate exceeds twenty-five per cent., the commissioners are not required to advertise, although they could in their discretion do so if they thought that the estimate was too high; that consequently when the estimate furnished to the commission for the improvement of a road asked for by the petitioners does exceed twenty-five per cent. of the road levy, the petitioners are not entitled to a mandamus directing the County Commissioners to advertise for bids.

*Decided February 11th, 1909.*

Appeal from the Circuit Court for Frederick County (HENDERSON and MOTTER, JJ.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and HENRY, JJ.

*Hammond Urner* (with whom was *George R. Dennis* on the brief), for the appellants.

*J. E. R. Wood,* for the appellees.

Boyd, C. J., delivered the opinion of the Court.

This is a sequel to the case of *Fout v. Frederick County,* reported in 105 Md. 545, in which a petition for a *mandamus* was filed to compel the County Commissioners to give the notice to the Chief Engineer of the Geological and Economic Commission, and to make the request of the Commission provided for in sec. 2 of Ch. 225 of the Acts of 1904—being sec. 34 of Art. 91 of the Code of Public General Laws. That application for a *mandamus* was resisted on two grounds: first, that the compulsory feature of that section was unconstitutional and second, that the provisions of that section were nullified by later and repugnant provisions of the Act. We sustained the constitutionality of the provisions in controversy, and also held that there was no conflict between sec. 2 and sec. 15, the latter being relied on to show the alleged repugnancy, reversing the order of the lower Court which had dismissed the petition and remanded the cause for further proceedings.

The appellees who were the appellants in the former case then filed another petition, in which they embodied the previous one and the proceedings thereunder, and alleged that a *mandamus* had been issued, to which the County Commissioners had made a return of their complete compliance with it. It is alleged in it that the County Commissioners refused to advertise for bids for the construction of the road as petitioned for, and a *mandamus* was prayed for to compel them to do so under the provisions of the Act.

The County Commissioners answered, alleging amongst other things that they had received from the Maryland Geological and Economic Commission, through its Chief Engineer, plans and specifications for the said proposed work, and an estimate of the cost thereof, exclusive of the cost of surveys and advertising, which estimate was alleged to be $10,445.44. In paragraph 6 of the answer they alleged substantially as follows: That the estimate for the proposed work of building

and improving the road, exclusive of the cost of surveys and
advertising, is greater than 25 per cent. of the road levy of
Frederick County, the amount of which levy was $20,000;
that it is provided in sec. 6, Ch. 225 of the Acts of 1904,
being sec. 38 of Art. 91 of the Code, that nothing in said
section shall require the respondents to advertise for work to
be done, under the provisions of said Act, to an amount great-
er than 25 per cent. of the road levy of said county, that
they are advised and aver that owing to that fact it is dis-
cretionary with them whether or not they shall proceed to
advertise for bids for building or improving said road and
that it would be unwise, improper and extravagant for them
to involve the county in so large an expenditure as would be
required from the county treasury. The answer concludes
by denying the right to issue the *mandamus* for reasons as-
signed, among which are that the allegations of the petition
were not sufficient in law to entitle the petitioners to said
writ.

The petitioners filed a replication in which they denied,
in the sixth paragraph, that the cost of the road, as estimated,
in so far as the sum the County Commissioners will have to
pay is in excess of 25 per cent. of the road levy for Frederick
County, and also denied the allegation that $20,000.00 is
the amount of the road levy. It also alleges that those ques-
tions and that as to whether there was any discretion vested
in the respondents as to advertising, cannot now be raised be-
cause such defenses were available in the previous case. It
concludes by saying: "These petitioners further replying
make general demurrer to the sixth paragraph of the answer,
setting up the defense that the estimated cost of the road
herein exceeds twenty-five per cent. of the road levy for
Frederick County, and that the advertising for bids is in the
discretion of the respondents."

A rejoinder was filed by the respondents in which, among
other matters, it is stated: "The defendants demur to the
portion of the sixth paragraph of said replication which de-
nies that the cost of the road therein mentioned, in so far as

the sum the defendants will have to pay, is in excess of twenty-five per cent. of the road levy for Frederick County; and the defendants join issue upon the portion of said paragraph which denies that twenty thousand dollars is the road levy of Frederick County. The defendants join issue in the law upon denial contained in said sixth paragraph that it is discretionary with the defendant to proceed or not to advertise for bids for the said proposed road improvement, in view of the amount of the cost of said work being greater than twenty-five per cent. of the road levy of said county."

It also denies the allegations in said sixth paragraph of the replication, to the effect that the same subject-matters of the petition in this case were tried in the former case. The Court below ordered that the demurrer of the defendants to the petition for *mandamus* be overruled, and that the demurrer to the sixth paragraph of the answer be sustained, but granted leave to the defendants to amend the answer within fifteen days. The answer not having been amended, an order was passed reciting the rulings of the Court on the demurrers and directing the writ of *mandamus* to issue. From that order this appeal was taken.

When a petition for a *mandamus* is filed, Art. 60 of the Code directs the Court to lay a rule requiring the defendant to show cause why the writ shall not issue within such time as the Court may fix, then requires the defendant to answer, and by sec. 5 provides that: "The petitioner may plead to or traverse all and any of the material averments set forth in said answer and the defendant shall take issue or demur to said plea or traverse five days thereafter," etc. Although the statute does not in terms authorize a demurrer to the answer, that practice has been sanctioned in *Hooper* v. *New,* 85 Md. 565, and *Co. Commrs.* v. *Banks,* 80 Md. 321. It might be questioned whether the practice adopted in these proceedings was technically correct, as some of the allegations in the respective pleadings were both traversed and demurred to; but as both sides committed that error, if it be error, we will,

without passing on that, proceed to determine the important points in the case.

1. We see no valid objection to the respondent (appellants) relying upon the defenses set up in paragraph six of the answer. It is true that sec. 4 of Art. 60 provides that: "No defendant shall be allowed on a second application for a mandamus to rely upon any matter by way of defense thereto which he might have relied on in his answer to a previous application for a mandamus by the same petitioner," but these defenses could not have been relied on in the previous case. That was an application for a wholly different purpose, and the estimate of cost was not furnished by the Chief Engineer until after the mandamus was issued in the former case. It would have been impossible for the County Commissioners to then state what the estimate was, for the simple reason that it had never been made, and none could be made until after the notice and request provided for in the Act, the right to require which was the subject-matter of the controversy in that proceeding.

2. The most important question of law involved is the proper construction of sec. 6 of Ch. 225 of the Acts of 1904. That is now sec. 38 of Art. 91 of the Code, and for convenience we will hereafter refer to the sections of that Article as the Act of 1904 is therein codified. Sec. 33 provides for a notification to the commission by a written notice to the Chief Engineer of the intention of the County Commissioners to cause a particular road, or section thereof, to be built, under the provisions of the Act, and for a request of the commission for plans and specifications and an estimate of the cost. Sec. 34 is the one under which these petitioners are proceeding, and it provides for the owners of two-thirds of the lands binding upon any public road or section thereof not less than one mile long, calling upon the County Commissioners to make the request of the commission as set forth in sec. 33, upon payment by the petitioners of a sum equal to ten per centum of the cost, or giving an approved bond for the payment thereof at any time it may be demanded by the

County Commissioners. Sec. 35 requires the commission, after due examination and being of the opinion that the proposed construction or repair of the road mentioned in the notice is proper, to "make or cause to be made necessary surveys, and draw up, or cause to be drawn up, plans and specifications for the proposed work, and shall furnish an estimate in detail of the cost of performing such work according to such plans and specifications;" provided, of course, the amount appropriated by the State and apportioned to the county by section 44 is sufficient for the necessary outlay. Sec. 36 refers to the character of construction, and sec. 37 requires the County Commissioners, on the order of the commission, to pay out of the funds of the county the cost of surveying, mapping, calculating, printing, etc.; in the preparation of said plans and specifications and estimate, etc.—not to exceed, however, for such plans, specifications and estimate fifty dollars per mile. Then sec. 38, parts of which are more immediately involved in this case, is as follows: "After the receipt of such plans and specifications and estimate by the Board of County Commissioners of any county in Maryland from said commission, said Board of County Commissioners, if they elect to proceed further hereunder, or if ten per centum of the estimated cost has been paid or secured as hereinbefore provided (in sec. 34), shall advertise * * * for bids for such road building or improvement * * * provided that nothing in this section shall require the County Commissioners of any county, upon the petition of such persons agreeing to pay ten per centum, to advertise for work to be done under the provisions of this sub-title to an amount greater than twenty-five per centum of the road levy of said county," etc.

The question to be determined is whether the proviso at the end of section 38 refers to the whole estimated cost of the road or to such part only as the county has to ultimately invest in the construction of the road. If we are to be governed by the language used there would seem to be little room for controversy. After the County Commissioners have re-

ceived the plans and specifications and the estimate made by the Commission, they are to advertise for "bids for *such road building or improvement* \* \* \* stating that sealed proposals for the *performance of said proposed work* in accordance with the plans and specifications will be received." It cannot be doubted that the advertising is for bids for the entire work, and not for the half or less. But if there be any doubt about the meaning of section 38, other sections make it clear. Section 39 provides that: "On the day stated in such advertisements the proposals shall be publicly opened and read and the contract shall be awarded to the lowest responsible bidder, provided his bid does not exceed *the amount estimated by the commission* aforesaid *as a proper maximum cost of said work;* and if all bids shall exceed *the amount specified,* then no contract shall be given, but proceedings may be had anew in the same manner as first provided." If given out, the contractor is required before entering upon the work to execute a contract with the County Commissioners to perform the work according to the specifications, and also to give bond "in a sum not less than the total amount of the contracts." When then the proviso says that the County Commissioners shall not be required *"to advertise for work to be done* under the provisions of this sub-title *to an amount greater than twenty-five per centum* of the road levy of said county," it is difficult to understand how it can be said that that only applies to the net amount the county ultimately has to invest in the road—that is to say, the amount after the State has paid half and the petitioners ten per centum. The advertisement is for bids for the entire work to be done, and, of course, the bids are for the entire, and not for the county's part of the cost.

3. In determining whether the amount to be paid for the work to be done will be greater than twenty-five per centum of the road levy of the county, we think the Act clearly contemplates that the County Commissoners shall be guided by *the estimate made by the Commission.* Sec. 38 concludes: "But under no condition shall the amount to be paid by the

State under the provisions of this sub-title exceed one-half of the detailed *estimates* furnished as hereinbefore provided." That refers to sec. 35, which requires the commission to "furnish an *estimate in detail* of the cost of performing such work." Then sec. 42 provides for the payment by the State to the County Commissioners of "one-half of the said total amount of costs and expenses so certified, not to exceed one-half of *the estimate* as hereinbefore provided." As the Act contemplates the payment by the State of one-half of the costs and expenses provided for, and limits the State to the payment of one-half of the amount of *the estimate,* it would seem to be clear that if *that estimate* exceeds twenty-five per centum of the road levy, the County Commissioners are not required to advertise, although we are of opinion that they could then, *in their discretion,* advertise, if they were satisfied that the estimate was too high, but they would take the risk of the county having to pay for the advertising, and of the commission refusing to co-operate with them in building the road.

4. It is not necessary to assign any reason for the Legislature making such provisions, for it was for that body, and not for the Court to determine when the County Commissioners should be *required* to advertise for bids, but the statute itself furnishes sufficient reasons for such action by the Legislature. As will be seen by reference to sec. 42, it is only after the work under the contract has been fully completed, as provided in the plans and specifications, and after the commission has certified to the Comptroller of the State the fact of the completion of the contract, together with a statement of the cost, including the expenses incurred by the County Commissioners for surveys, plans, specifications, printing and advertising, and after the County Commissioners have certified that the payment of the said total amount so certified by said commission has been made, that the Comptroller is authorized to pay to the County Commissioners one-half of the total amount of costs and expenses so certified—not to exceed one-half of the estimate thereinbefore provided. The county must therefore first pay the entire costs, and then can only

obtain one-half of the amount from the State when the conditions of the statute are complied with. The Legislature therefore might very well have deemed it unreasonable to *require* the County Commissioners to pay out more than twenty-five per centum of the money levied for the public roads in improving or repairing a road, at the instance of the owners of two-thirds of the lands binding upon it, and then wait for the return of one-half of it by the State and ten per cent. of the amount by the property owners, after the completion of the contract. It certainly is not unreasonable to suppose the Legislature did not intend to *require* the County Commissioners to proceed with the construction of a road when it was found (as according to the allegations of the answer in this case) that one-half of the road levy of the county would have to be set apart for such road until it was completed.

The section under which this proceeding was begun (sec. 34) throws some light on the question. That requires the petitioners to state their willingness "to pay for the said construction or repairs a sum equal to ten per centum of *the cost of such construction* or repairs." It is not contended that that only refers to the net cost to the county, but we understand it to be admitted that it means the *whole cost* of construction—including that which the State afterwards pays to the county. Why should that construction be placed on the above language, if the construction contended for by the appellees must be given to that in the proviso in sec. 38 ?

But as we have already intimated, we think it clear that the language of that proviso only *requires* the County Commissioners to advertise for work to be done, if the *estimate* furnished by the commission be not greater than twenty-five per centum of the road levy of the county, and if the facts set out in paragraph six of the answer be true the appellants were not required to so advertise.

5. "It is a settled doctrine in the law of *mandamus,* that the party applying must show *a clear legal right* in himself, and a corresponding imperative duty on the part of the de-

fendant; and without the establishment of such clear legal right and duty, there is no ground shown for *mandamus."* *State, ex rel. Henderson,* v. *Taylor,* 59 Md. on page 344. Inasmuch, therefore, as the petition does not make such allegations as were necessary to avoid the effect of this proviso it was defective. If then we consider the demurrer to the petition by the respondents and the demurrer to the answer by the petitioners, and hold they were not waived by other allegations in the pleadings, as the Court below apparently held, there was error in the rulings on those demurrers. But without discussing the question of waiver, the order for the issuance of the writ of *manadmus* was founded on those rulings, and must, in either event, be reversed, as the writ could not properly issue, under our construction of the statute, if the facts are as alleged in paragraph six of the answer, and there is no evidence in the record to show they are not.

It was said at the argument on the part of the appellees, that the answer did not correctly state the amount of the road levy. If they desire to offer evidence on that subject, we will, upon application, remand the cause in order that further proceedings may be taken; but as that may not be desired, after our views of the proper construction of the statute are known, we will not now do so.

<div style="text-align:right">

*Order reversed, the appellees to pay the costs above and below.*